AO 106 (Rev. 04/10) Application for a Search Warrant      AUTHORIZED AND APPROVED/DATE: s/Tiffany Edgmon 08/29/2025

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
ELECTRONIC DEVICES: BLACK GALAXY S10+ IMEI:357959102922297 )

Case No. M-25-522-SM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

located in the ___Western___ District of ___Oklahoma___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |

The application is based on these facts:
See attached Affidavit of Special Agent Paige Lang, Federal Bureau of Investigation, which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Paige Lang, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/29/25

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma      SUZANNE MITCHELL, U.S. Magistrate Judge
*Printed name and title*

## THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ELECTRONIC DEVICES: BLACK GALAXY S10+ IMEI:357959102922297 | Case No. __MJ-25-522-SM__ |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Paige Lang, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation and have been since February of 2022. During my training and since that time, I have received formal training from the FBI as well as training through contact with experts from various law enforcement agencies regarding a wide range of criminal offenses including cases involving child pornography and sexual exploitation of children.

2. As a Special Agent with the FBI, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

3. The information contained in this affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, documents and other records. This Affidavit is made in support of an application for a warrant to search the following digital device, a black galaxy S10+ IMEI: 357959102922297 (**SUBJECT DEVICE**). The **SUBJECT DEVICE** is currently located in the Western District of Oklahoma, in the Evidence Control Room at the FBI Oklahoma City Field office in Oklahoma City, Oklahoma. The **SUBJECT DEVICE** is described in detail in Attachment A to this affidavit. I request a warrant to search the **SUBJECT DEVICE** for the items specified in Attachment B

hereto, which constitute instrumentalities, fruits, and evidence of violation of 18 U.S.C. § 2252A(a)(5)(B) (Possession of Child Pornography).

4.  This investigation, described more fully below, has revealed that there is probable cause to believe that evidence of possession of child pornography is located on the **SUBJECT DEVICE**. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant.

## TERMS

5.  The following definitions apply to this Affidavit and Attachment B:

    a.  "Computer," as used broadly herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones. *See* 18 U.S.C. § 1030(e)(1)

    b.  "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

    c.  "Cloud storage," as used herein, is a form of digital data storage in which the digital data is stored on remote servers hosted by a third party (as opposed to, for example, on a user's computer or other local storage device) and is made available to users over a network, typically the Internet.

    d.  "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

  e. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

  f. "Child Sexual Abuse Material" includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer images, or computer-generate image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. See 18 U.S.C § 2256(8).

  g. "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, see 18 U.S.C § 2256(8)(A), or that have been created, adapted, or modified to appear to depict an identifiable minor, see 18 U.S.C § 2256(8)(C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between person of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. See U.S.C. § 2256(2)(A).

  h. "Visual depictions" include undeveloped file and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. 2256(5).

## **FACTS OF INVESTIGATION**

7. On or about January 21, 2022, Cleveland County Sheriff's Office (CCSO) began an investigation into the National Center for Missing and Exploited Children (NCMEC) CyberTip

109233475. The CyberTip was made by Synchronoss Technologies, Inc. (Synchronoss), a cloud-based storage provider for Verizon. The CyberTip indicated the incident type as "Child Pornography."

8. The phone number associated with the CyerTip was 405-326-1325. There were 351 files reported in the CyberTip. NCMEC queried their databases and identified a potential match of the cell phone number ending in 1325 to Heather Nichole Cameron (Heather). Through an open records search, the number was found to be the main number for Darryl James Cameron (Darryl).

9. At the time, Heather and Darryl both lived at 17200 Sunnylane Road, Lot 69, Norman, Oklahoma 73071.

10. Most of the files related to CyberTip 109233475 appeared to be of nude prepubescent females. Two of the files are described as follows:

    a. <u>FileName: d54ad66be59a4a6eafd5b1616590cf4d_file1</u>
    <u>Description:</u> The image depicts a prepubescent female, wearing a pink t-shirt with a cat on it, the female had no clothes on below her waist. The female was sitting on her bottom leaned back on one hand facing the camera with her legs opened exposing her vagina. The female had her other hand placed on her exposed vagina.

    b. <u>Filename: d54ad66be59a4a6eafd5b1616590cfd_file203</u>
    <u>Description:</u> The image depicts a series of images from a video made into a collage. The collage starts by showing a prepubescent female fully clothed. As the images progress, the prepubescent female appears to take of her tank top, exposing her bare chest. The images depict her removing her pants to expose her nude genitalia. The following images show the prepubescent female in a series of positions to include squatting while exposing her anus, lifting her leg up to expose her vagina to the camera, and squatting over the camera exposing her genitalia.

11. On or about February 9, 2022, CCSO executed a search warrant at the residence of Heather and Darryl, located at Sunnylane Road, Lot 69, Norman, Oklahoma 73071, approximately 12 digital devices were seized during the search.

12. On or about February 9, 2022, CCSO executed search warrants for the persons of

Heather and Darryl. Nothing was seized from Heather. A black galaxy S10+ IMEI: 357959102922297 (**SUBJECT DEVICE**) and a tablet were seized from Darryl.

13. On or about March 7, 2022, Darryl was interview by CCSO detectives. Darryl had an attorney present and was *mirandized*. Darryl confirmed his cell phone number was 405-326-1325 and stated he has had the number since around 2010. Darryl stated there were only two people who had access to his cell phone, himself and C.C.[1] Darryl stated he one hundred percent knew his son would not have downloaded child pornography to his phone. Darryl could not provide a reasonable explanation as to why images depicting child pornography were associated with his cell phone number. Darryl repeatedly told interviewers that he had no idea how hundreds of child pornography images got on his phone. Darryl denied every viewing child pornography.

14. Through the course of CCSO investigation an additional CyberTip associated with cell phone number 405-326-1325 was discovered. CyberTip 117288923 was submitted by Synchronoss with 39 images listed as possible child pornography. One of the images will be described as follows:

> a. Filename:d54ad66be59a4a6eafd5b1616590c4fd_b6f47372c4f3d544e8fdd 181df9de2c442259b3ced267b5525cd34477c638a80
> Description: The image depicts a minor female with no clothes on, sitting on the floor leaned back on one hand. The female was facing the camera with her legs opened exposing her vagina. The female had her other hand placed on her vagina with her index finger inserted inside of her vagina.

15. All of the digital devices seized pursuant to the residence search warrant and body warrant of Darryl, were sent to Homeland Security Investigations for a digital forensic examination.

16. On or about March 1, 2024, CCSO picked up thirteen of the fourteen digital devices from HSI. HSI was unable to extract the **SUBJECT DEVICE** when they originally received the

---

1 At the time of the interview, C.C. was 13 years old.

evidence. HSI had recently acquired access to Cellebrite Premium which had the capability to extract the **SUBJECT DEVICE**. On or about March 7, 2024, HSI informed CCSO the **SUBJECT DEVICE** was successfully extracted and ready to be picked up. On the same day, CCSO picked up the **SUBJECT DEVICE**. A new warrant was not obtained for the extraction of the **SUBJECT DEVICE**. HSI extracted the **SUBJECT DEVICE** pursuant to the search warrant CCSO obtained in February 2022.

17. On or about July 24, 2025, Cleveland County District Attorney's office dismissed their case against Darryl and referred it for federal prosecution.

18. On or about July 31, 2025, the Federal Bureau of Investigation (FBI) received a referral for Darryl's case from the Western District of Oklahoma United States Attorney's Office.

19. On or about August 22, 2025, FBI collected the **SUBJECT DEVICE** from CCSO evidence custodian and transported the evidence to Oklahoma City FBI's evidence control room for storage. Since the **SUBJECT DEVICE** was originally seized on February 9, 2022, it remained in law enforcement custody—either in the custody of CCSO or HSI.

## SPECIFICS OF SEARCH AND SEIZURE OF CELL PHONES

20. Searches and seizures of evidence from smartphones commonly require agents to download or copy information from the smartphones and its components, such as a flash drive or other digital storage units attached to the phone, to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true for the following two reasons:

    a. Smartphone devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all

of the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

b.  Searching smartphones for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of smartphone hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a smartphone system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since smartphone evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

21.  In order to fully retrieve data from a smartphone system, the analyst needs all magnetic storage devices as well as the central processing unit ("CPU"). In cases involving child exploitation where the evidence frequently includes graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all of the system software (operating systems or interfaces, and hardware drivers) and any application software which may have been used to create the data (whether stored on hard drives or on external media).

22.  Furthermore, because there is probable cause to believe that the smartphone and its storage devices are all instrumentalities of crimes they should all be seized as such.

**SEARCH METHODOLOGY TO BE EMPLOYED REGARDING ELECTRONIC DATA**

23.  The search procedure for electronic data contained in smartphone hardware,

smartphone software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

    a.    on-site triage of smartphone systems to determine what, if any, storage devices or digital storage units have been connected to such smartphone systems, a preliminary scan of image files contained on such systems and digital storage devices to help identify any other relevant evidence or potential victims, and a scan for encryption software;

    b.    on-site forensic imaging of any computers that may be partially or fully encrypted, in order to preserve unencrypted electronic data that may, if not immediately imaged on-scene, become encrypted and accordingly unavailable for examination; such imaging may require several hours to complete and require law enforcement agents to secure the search scene until that imaging can be completed;

    c.    examination of all of the data contained in such smartphone hardware, smartphone software, or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

    d.    searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offense, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offense specified above);

    e.    surveying various file directories and the individual files they contain;

    f.    opening files in order to determine their contents;

    g.    scanning storage areas;

  h.  performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment B; and

  i.  performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B.

## CONCLUSION

24. Based on my training and experience, I know that people who use their smartphone to view/access/possess child pornography do so in private to avoid detection. I believe there is probable cause that the **SUBJECT PHONE** and other digital file storage device(s) attached to the **SUBJECT PHONE** will contain evidence of the aforementioned criminal violations, as set forth in detail in Attachment B

25. Based on the above information, there is probable cause to believe that the foregoing laws have been violated, and that evidence of these offenses are located on the **SUBJECT DEVICE.**

26. Based upon the foregoing, I respectfully request that this Court issue a search warrant for the **SUBJECT DEVICE**, described in Attachment A, authorizing the seizure of the items described in Attachment B to this affidavit.

												_____
												Paige Lang
												Special Agent
												Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this 29th day of August, 2025.

												_____
												SUZANNE MITCHELL
												United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF SUBJECT DEVICE

A black Galaxy S10+ IMEI: 357959102922297



## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED AND SEARCHED

1.    All records on **SUBJECT DEVICE** described in Attachment A that relate to violations of 18 U.S.C. § 2252A(a)(5)(B) (Possession of Child Pornography) including:

    a. Computer(s), as broadly defined in 18 U.S.C. § 1030(e), other digital file storage devices, computer hardware, computer software, computer related documentation, computer passwords and data security devices, videotapes, video recording devices, video recording players, and video display monitors that may be, or are used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography.

    b. Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

    c. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, distribution or accessing with the intent to view (or the attempt to do so) child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

    d. In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

    e. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

    f. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

    g. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to whose with an interest in child pornography.

    h. Any and all notes, documents, records, or correspondence, in any format or

medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

i. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

j. Any and all visual depictions of minors engaging in sexually explicit conduct.

k. Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).